**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**KEVIN TRUDEAU, ALLIANCE
PUBLISHING GROUP, INC., and
SHOP AMERICA (USA) L.L.C.,**

                Plaintiffs,                No. 05-cv-1019
                                              (GLS-RFT)

        v.

**MINDY BOCKSTEIN,** *in her official
capacity,* **and JON SORENSEN,**
*in his official capacity*,

                Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Jenner & Block LLP<br>One IBM Plaza<br>Chicago, Illinois 60611 | ANDREW JACOBSON, ESQ.<br>DANIEL HURTADO, ESQ.<br>DAVID BRADFORD, ESQ. |
| Hiscock & Barclay LLP<br>50 Beaver Street<br>Albany, New York 12207 | MICHAEL GRYGIEL, ESQ.<br>WILLIAM HURST, ESQ. |
| **FOR THE DEFENDANTS:** | |
| HON. ANDREW M. CUOMO<br>New York State Attorney General<br>The Capitol<br>Albany, New York 12224 | ROGER KINSEY, ESQ.<br>BRIDGET HOLOHAN, ESQ. |
| New York State Department of Law<br>The Capitol | JAMES MCGOWAN, ESQ. |

Albany, New York 12224

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Kevin Trudeau, Alliance Publishing Group, Inc., and Shop America (USA) L.L.C. bring this action pursuant to 42 U.S.C. § 1983 against defendants Mindy Bockstein and Jon Sorensen, employees of the New York State Consumer Protection Board, in their official capacities, seeking an injunction that would prohibit defendants from contacting cable or broadcast stations to coerce them to stop airing infomercials promoting a book authored by Kevin Trudeau. Pending is the defendants' motion for summary judgment.

### II. Facts

Kevin Trudeau is an author and a self-described consumer advocate who has written several books touting natural cures, and criticizing the Federal Trade Commission, the Food and Drug Administration, and the pharmaceutical industry. Trudeau uses his books–as well as related television infomercials–to "espouse his views that . . . society should

2

address disease and health issues by focusing more on a healthy lifestyle and on natural remedies and less on drugs and surgery." *Amended Compl. ¶ 3; Dkt. 87.* Alliance Publishing Group is Trudeau's publisher; Shop America markets Trudeau's books via infomercials. For ease of reference, the plaintiffs are referred to, collectively, as "Trudeau."

This lawsuit arose when the New York State Consumer Protection Board (the "CPB"), alerted by consumer complaints concerning Trudeau's book *Natural Cures "They" Don't Want You to Know About* ("Natural Cures" or the "Natural Cures book"), initiated an investigation concerning the truth of the assertions in the book. Based on certain actions and/or comments made by CPB personnel, Trudeau became concerned that the CPB might contact cable television stations and request, advise, or coerce them to stop airing Trudeau's infomercials regarding the Natural Cures book. Thus, Trudeau filed a complaint on August 11, 2005, seeking "a declaration that the CPB is not permitted under the First and Fourteenth Amendments to the United States Constitution to coerce cable and/or broadcast stations or networks to cease disseminating [Trudeau's] advertisements for [the Natural Cures book], and for an order enjoining the CPB from attempting to do so." *Original Compl. ¶ 2; Dkt. 1.*

3

Contemporaneously with the filing of the original complaint, Trudeau sought a temporary restraining order ("TRO") enjoining the CPB from contacting any cable or broadcast station.  *See Dkt. 2.*  Trudeau's original request for a TRO was denied for failure to comply with the local rules of the court.  *See Text Only Order dated August 15, 2005.*  Trudeau filed a second motion for a TRO on August 16, 2005, this time seeking an order that would require the CPB to afford Trudeau prior notice of its intent to contact cable or broadcast stations.  *See Dkt. 6.*  The court scheduled a hearing on Trudeau's request for a TRO, and, pending the hearing, ordered the CPB to maintain the status quo.  *See Text Order dated August 17, 2005.*  At a hearing on August 30, 2005, the court held that Trudeau's application for a TRO was moot in light of the fact that the CPB had already informed Trudeau of its intention to contact cable and broadcast stations.  *See Dkt. 15.*[1]  At the hearing, counsel for Trudeau orally requested a broader TRO which would prevent the CPB from contacting cable and broadcast stations.  That request was denied.

---

[1] As stated earlier, in his application for a TRO, Trudeau had only requested an order that the CPB be required to inform him prior to contacting cable and broadcast stations.  Because the CPB did precisely that, the court held that the request for a TRO was moot.

4

In the late afternoon of August 30, 2005, following the hearing at which Trudeau's request for a TRO was denied, Trudeau prepared a renewed motion for a TRO prohibiting the CPB from sending letters to cable and broadcast stations, and for a preliminary injunction providing the same relief. Trudeau supplied a copy of the renewed motion to chambers, and to counsel for the CPB, on the afternoon of August 30; however, the motion was not actually filed until August 31. The court granted the TRO around mid-day of August 31. *See Dkt. 20.*[2] In the time period between the August 30 hearing at which Trudeau's request for a TRO was denied, and the granting of the revised TRO on August 31, the CPB sent a letter to approximately 102 cable and broadcast stations (the "CPB Letter"). The CPB Letter stated the CPB's belief that the infomercials for the Natural Cures book were "misleading and prey upon the chronically and terminally ill consumer." *See Letter attached as Ex. A to Sorensen Aff.; Dkt. 130.*

---

[2]The TRO provided, *inter alia*, as follows:

1. The Defendants are hereby enjoined from directly contacting any cable or broadcast station in order to induce such station to refuse to carry, or cease to carry, plaintiffs' advertisements for the Natural Cures book authored by Kevin Trudeau; and
2. The Defendants are hereby enjoined from publishing or disseminating the letter attached as Exhibit A to the TRO application, or an letter substantially similar in content, as a means of indirectly contacting cable or broadcast stations . . .

*Temporary Restraining Order dated August 31, 2005; Dkt. 20.*

5

Additionally, the CPB Letter "invite[d]" the stations to review the infomercial, and "encourage[d]" them to remove it from their programming or insert disclaimers at the beginning and end of the infomercial. *Id.*

On September 6, 2005, the court conducted a hearing on Trudeau's motion for a preliminary injunction. At that hearing, the court issued a preliminary injunction which provided the same relief as the earlier-issued TRO. *See Hearing Transcript, attached as Ex. 21 to Decl. of Daniel Hurtado; Dkt. 133.* Additionally, the court ordered the CPB to provide Trudeau with a list of the 102 stations to whom the CPB Letter had been sent. *Id.* Upon obtaining the list, Trudeau mailed what it termed a "corrective letter" (the "Trudeau Letter") to the 102 stations in question.[3]

In light of the CPB Letter, as well as other developments subsequent to the filing of the original complaint in this action, Trudeau filed an amended complaint on June 2, 2006. *See Dkt. 87.* Trudeau supplemented his prior requests for declaratory and injunctive relief with claims for

---

[3]The Trudeau Letter read, in part, as follows:

> We also wanted to let you know that if you received a letter from the Consumer Protection Board of New York regarding our infomercial, you are welcome to disregard their correspondence. As you can see from the attached letter, a federal court ruled that the CPB was, in effect, wrong to send the letter.

*See Letter, attached as Ex. 22 to the Decl. of Daniel Hurtado; Dkt. 133.*

6

damages based on alleged First Amendment and due process violations, as well as common law claims for defamation and tortious interference. *Id.* Subsequently, Trudeau voluntarily dismissed the due process claim and the common law claims, as well as all claims for damages. *See Dkt. 119; Dkt. 125.* Additionally, Trudeau stipulated to the dismissal of the CPB as a defendant. *See Dkt. 129.* Thus, the only remaining defendants are Mindy Bockstein and Jon Sorensen, who are sued in their official capacities.[4] Trudeau seeks only injunctive relief from these defendants.[5]

Bockstein and Sorensen have moved for summary judgment, arguing that: (1) Trudeau's remaining requests for relief are barred by the Eleventh Amendment; (2) Trudeau's claims are moot; (3) Trudeau cannot meet the standard for the grant of a permanent injunction; and (4) Trudeau's request for injunctive relief is not permitted under Rule 65(d) of the Federal Rules of Civil Procedure. Because the court concludes that Trudeau's claims are

---

[4] Trudeau's amended complaint initially named Teresa Santiago as a defendant. However, in January of 2007, Mindy Bockstein succeeded Teresa Santiago as Chairperson and Executive Director of the CPB. Thus, Bockstein has been substituted as a defendant for Santiago. Additionally, a third defendant, Caroline Quartararo, was terminated by the CPB, and is therefore no longer named in this suit. *See Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., p. 1 n. 1; Dkt. 134.*

[5] It is unclear whether Trudeau continues to press his claims for declaratory relief. In any event, this determination is irrelevant to the current issues before the court.

barred by the Eleventh Amendment, it need not consider the defendants' alternative arguments for dismissal.

## III. Discussion

The Eleventh Amendment prohibits the "Judicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). This jurisdictional bar applies regardless of whether the relief sought is legal or equitable. *See Papasan v. Allain,* 478 U.S. 265, 276 (1986).

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity. *See In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted). However, under the doctrine of *Ex Parte Young,* 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity–notwithstanding the Eleventh Amendment–when a plaintiff

"(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency,* 482 F.3d at 618 (quotations and citations omitted). In addition to these requirements, an official capacity suit may proceed only where a government entity's "policy or custom" was the "moving force" behind the alleged violation of federal law. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 694 (1978)).

Here, the parties dispute both the existence of an ongoing violation of federal law, and the nature of the relief Trudeau seeks, *i.e.,* whether it is prospective or retrospective. The court need not resolve these issues, however, because Trudeau has conceded that the challenged conduct in this case did not result from a CPB policy or custom. In his response to the CPB's Rule 7.1(a)(3) statement,[6] Trudeau represents that it is "[n]ot disputed" that "[t]here was no custom or practice in place at the CPB to

---

[6]Pursuant to the Local Rules of the United States District Court for the Northern District of New York, a motion for summary judgment "shall contain a Statement of Material Facts," which "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. R. 7.1(a)(3). Additionally, the party opposing summary judgment "shall file a response to the Statement of Material Facts," which "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." *Id.*

directly contact specific broadcasters regarding advertising concerns." *Trudeau's Resp. to Defs.' Rule 7.1(a)(3) Statement, ¶ 9; Dkt. 135.*[7]

Rather than argue that the alleged constitutional violation in this case was driven by a state policy or custom, Trudeau instead contends that the "policy or custom" requirement applies only in the context of an action for damages, not an action for injunctive relief.  *See Trudeau's Br. in Opp'n to Defs.' Mot. for Summ. J., p. 12; Dkt. 134.*  Trudeau cites *Kentucky v. Graham,* 473 U.S. 159 (1985), for this proposition.  But that case is inapposite; while the plaintiff in *Graham* sought only money damages, nowhere in the case does the Court limit its holding to suits for money damages.  The Court writes, without proviso, caveat, or qualification, that "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *Id.* at 166 (citations omitted).

This principle was recently affirmed by the Second Circuit.  In *Reynolds v. Giuliani,* Nos. 06-0283-cv, 06-0284-cv, 2007 WL 3171314 (2d Cir. Oct. 31, 2007), the court held that "a state official may be sued in his or her official capacity for injunctive or other prospective relief, but only when

---

[7]This concession arguably marks a departure from the allegations in Trudeau's amended complaint.  *See, e.g., Amended Compl. ¶ 72; Dkt. 87* ("Defendants' conduct constitutes action taken under color of law, or state action, undertaken pursuant to an agency policy, practice or custom . . . .").

10

the state itself is the moving force behind the deprivation." *Id.* at *6 (citing *Graham,* 473 U.S. at 166, 169). The Second Circuit expressly rejected the contention that the "policy or custom" requirement, derived originally from *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), was inapplicable to a suit seeking prospective injunctive relief. *See Reynolds,* 2007 WL 3171314 at *6 ("*Monell* draws no distinction between injunctive and other forms of relief and, by its own terms, requires attribution of misconduct to a municipal policy or custom in suits seeking monetary, declaratory or injunctive relief.") (citations omitted); *accord Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir. 2000) (holding, in a suit for a declaratory judgment and permanent injunction against police officers in their official capacities, that "[i]n order to recover under section 1983, [plaintiff] must prove that his constitutional rights were violated as a result of a custom or policy of the City") (citing *Monell,* 436 U.S. at 694).

Accordingly, because Trudeau has disclaimed the existence of a CPB policy or custom, his claims against Bockstein and Sorensen, named in their official capacities, must be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

11

**ORDERED** that defendants' motion for summary judgment is GRANTED; and it is further

**ORDERED** that the amended complaint is dismissed; and it is further

**ORDERED** that the preliminary injunction issued by oral order dated September 6, 2005, is dissolved; and it is further

**ORDERED** that the Clerk of the Court enter judgment and close the case.

**IT IS SO ORDERED.**

November 30, 2007
Albany, New York

Gary L. Sharpe
U.S. District Judge

12