**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN TRUDEAU, ALLIANCE**
**PUBLISHING GROUP, INC., and**
**SHOP AMERICA (USA) L.L.C.,**

                                        **Plaintiffs,**            **No. 05-cv-1019**
                                                                   **(GLS-RFT)**

                    **v.**

**MINDY BOCKSTEIN,** *in her official*
*capacity,* **and JON SORENSEN,**
*in his official capacity,*

                                        **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Jenner & Block LLP                         ANDREW JACOBSON, ESQ.
330 North Wabash Avenue                    DANIEL HURTADO, ESQ.
Chicago, Illinois 60611                    DAVID BRADFORD, ESQ.

Hiscock & Barclay LLP                      MICHAEL GRYGIEL, ESQ.
50 Beaver Street                           WILLIAM HURST, ESQ.
Albany, New York 12207

**FOR THE DEFENDANTS:**
HON. ANDREW M. CUOMO                       ROGER KINSEY, ESQ.
New York State Attorney General            BRIDGET HOLOHAN, ESQ.
The Capitol
Albany, New York 12224

New York State Department of Law           JAMES MCGOWAN, ESQ.
The Capitol

Albany, New York 12224

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Kevin Trudeau, Alliance Publishing Group, Inc. and Shop America (USA) L.L.C. (collectively, "Trudeau") have moved for reconsideration of the court's November 30, 2007 Memorandum-Decision and Order. The motion for reconsideration is granted; however, for the reasons that follow, the court affirms the grant of summary judgment in favor of the defendants.

### II. Facts and Procedural History

The relevant facts are recited in the court's November 30, 2007 Memorandum-Decision and Order, (*see* Dkt. No. 145),[1] and will not be repeated in detail here. In summary, Trudeau, an author and consumer advocate, brought this action seeking, *inter alia,* a permanent injunction prohibiting the defendants, employees of the New York State Consumer Protection Board (the "CPB"), from contacting cable and broadcast media

---

[1] *Trudeau v. Bockstein,* No. 05-cv-1019, 2007 WL 4264583 (N.D.N.Y. Nov. 30, 2007).

2

carriers and requesting that they refuse to carry advertisements for Trudeau's book, *Natural Cures "They" Don't Want You to Know About* (the "Natural Cures book").  The action was spurred by Trudeau's concern that the CPB, having received consumer complaints, might take steps to persuade or coerce media outlets from airing his infomercials.  Trudeau's fears were ultimately realized when, subsequent to the filing of the instant suit, but prior to entry of any provisional relief, CPB officials sent a letter (the "CPB Letter") to approximately 102 cable and broadcast stations stating the CPB's belief that the infomercials for the Natural Cures book were misleading.  The court subsequently issued a temporary restraining order and preliminary injunction prohibiting the CPB from having further contact with cable or broadcast stations regarding the Natural Cures book.

In its prior decision, the court granted the defendants' motion for summary judgment on the grounds that Trudeau had conceded that the challenged conduct by CPB officials did not result from a CPB "policy or custom," as required for an official capacity suit for injunctive relief.  (*See* Memorandum-Decision and Order, pp. 9-11; Dkt. No. 145 (citing *Kentucky v. Graham,* 473 U.S. 159 (1985) and *Reynolds v. Giuliani,* 506 F.3d 183 (2d Cir. 2007)).)  Trudeau moves for reconsideration of the court's ruling,

arguing that although he conceded that the challenged conduct did not result from a CPB "custom or *practice*," he nowhere conceded that the conduct did not result from a CPB "custom or *policy*."

### III.  <u>Standard of Review</u>

The standard for granting a motion for reconsideration is strict. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  Courts in the Northern District of New York have recognized three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.  *See, e.g., C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship),* 182 B.R. 1, 3 (N.D.N.Y. 1995) (citations omitted).

Of significance here, "[a] motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue."  *Fredericks v. Chemipal, Ltd.,*

4

No. 06-cv-966, 2007 WL 1975441, at *1 (S.D.N.Y. July 6, 2007).  Such a

motion does not present an opportunity for taking a "second bite at the

apple."  *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998).

Thus, "[w]hen faced with a motion for summary judgment, a responding

party is not entitled to try out one theory of defense and, if that theory

proves unavailing, to then seek reconsideration by offering a different

theory."  *Bell v. Eastman Kodak Co.,* No. 95-cv-4687, 1998 WL 801842, at

*3 (N.D. Ill. Nov. 12, 1998); *see In re Bird,* 222 B.R. 229, 235 (Bankr.

S.D.N.Y. 1998) ("A motion for reconsideration is not a forum for new

theories or for plugging the gaps of a lost motion with additional matters.")

(quotations and citation omitted).

## IV.  Discussion

### A.    Motion for Reconsideration

Based on the standard and principles recited above, the court would

be justified in denying Trudeau's motion for reconsideration.  Regardless of

their validity, the arguments raised by Trudeau in his motion for

reconsideration were never mentioned in the briefing on the underlying

motion for summary judgment.  In their brief in support of summary

judgment, the defendants argued as follows:

> Moreover, plaintiffs cannot demonstrate that the sending of one letter on August 30, 2005 was motivated by a state policy or practice.  In fact, the CPB did not, and does not have, any policy in place with respect to direct contact with cable and broadcast stations regarding advertisements. . . . Even if plaintiffs could establish that their rights were violated, they cannot establish that a state policy or custom was the "moving force" behind the violation and thus, are barred from obtaining a permanent injunction against defendants.

(Dkt. No. 130, p. 6.)  In his response brief, Trudeau's argument on the

"policy or custom" issue was limited to the following passage:

> Second, the CPB contends that the constitutional violation at issue must be the result of a state policy or custom that was the "moving force behind the alleged constitutional deprivation." But that requirement applies only in the context of an action for damages under 42 U.S.C. 1983.  It is thus inapplicable here.

(Dkt. No. 134, p. 12 (citations omitted).)  Thus, Trudeau, having two

arguments with which to rebut the defendants' point, chose to raise only

one of them.  Trudeau easily could have argued: (1) that the policy or

custom requirement was inapplicable, and (2) that even if it were

applicable, it was satisfied.  Instead, whether intentionally, through

inadvertence, or by reason of overconfidence, he chose not to raise the

latter point.

The situation here is similar to that presented in *JSMS Rural LP v.

GMG Capital Partners III, LP,* No. 04-cv-8591, 2006 WL 2239681 (S.D.N.Y.

6

Aug. 4, 2006) ("*JSMS Rural II*"), where the court addressed a motion for reconsideration of its earlier opinion in *JSMS Rural LP v. GMG Capital Partners III, LP,* No. 04-cv-8591, 2006 WL 1867482 (S.D.N.Y. July 6, 2006) ("*JSMS Rural I*").  In *JSMS Rural I,* the plaintiff had argued, in opposition to defendants' motion for summary judgment on plaintiff's securities fraud claim, that it was not necessary for a securities fraud plaintiff to prove that it had suffered an economic loss.  *See JSMS Rural I,* 2006 WL 1867482, at *4.  When the court disagreed, and therefore granted defendants' motion for summary judgment, the plaintiff countered with a motion for reconsideration in which it argued that it had, in fact, suffered an economic loss.  *See JSMS Rural II,* 2006 WL 2239681, at *1.  The court denied plaintiff's motion for reconsideration on the grounds that "it would be unfair to allow the losing party to 'move the goalposts' on the prevailing party by re-litigating the lost motion with new evidence and arguments."  *Id.* at *2.

The posture of the present case is nearly identical to that of *JSMS Rural II.*  Trudeau, having lost on his primary argument, has filed a motion for reconsideration in which he advances an alternative argument that was

not previously raised.[2]  In consideration of the substantial time and effort

that was wasted by Trudeau's delay in making his new argument, the court

is tempted to follow the lead of *JSMS Rural II* and deny the motion for

reconsideration.  *See also In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.

Supp. 2d 613, 614 (S.D.N.Y. 2000) ("[R]econsideration of a previous order

is an extraordinary remedy to be employed sparingly in the interests of

finality and conservation of scarce judicial resources.") (quotations and

citations omitted).  However, two factors convince the court that denial of

the motion would be inappropriate.

     First, unlike in *JSMS Rural II,* the new argument advanced by

Trudeau has some merit.  *See Prin Corp. v. Altman (In re Altman),* 265

B.R. 652, 657 (Bankr. D. Conn. 2001) ("An exception to the abandonment

doctrine may apply where a party would suffer an 'obvious injustice' by a

court's failure to consider a meritorious, but otherwise abandoned,

argument.") (citation omitted).  The words "policy" and "practice" are not–or

at least not always–interchangeable.  In the right circumstances, a single

action may constitute state policy.  *See Anthony v. City of New York,* 339

_____

     [2]What is puzzling about the current case is that Trudeau rested his case on a primary
argument that was plainly much weaker than the back-pocket argument he now flourishes.

8

F.3d 129, 139 (2d Cir. 2003) ("Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim.") (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986)).  Thus, although the court does not here determine whether the sending of the CPB Letter was in fact taken pursuant to a "policy," the court concedes that it was error to interpret Trudeau's N.D.N.Y. R. 7.1(a)(3) Statement of Material Facts as admitting the lack of a CPB policy.

Second, the court's Memorandum-Decision and Order was based, in part, on *Reynolds v. Giuliani,* 506 F.3d 183 (2d Cir. 2007), a case decided after briefing on defendants' motion for summary judgment was complete. Unlike Trudeau, the court is not convinced that the holding of *Reynolds* represents new law.  *See Shain v. Ellison,* 356 F.3d 211, 216 (2d Cir. 2004) (holding that "a plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent") (emphasis in original) (citation omitted).  Certainly, the state of the law was sufficiently unsettled that Trudeau ought not to have hung his hat solely on the argument that the "policy or custom" requirement was inapplicable to a suit for injunctive relief.  However, the court cannot ignore the fact that had Trudeau had the benefit of the *Reynolds* case, he might

9

have taken a different tack with regard to his arguments on the underlying

motion for summary judgment.

Accordingly, Trudeau's motion for reconsideration is granted.

However, because alternative grounds for summary judgment exist, the

court does not resolve the issue of whether the challenged conduct was

taken pursuant to CPB policy.

**B.** **Alternative Grounds for Summary Judgment**

Before turning to the alternative grounds advanced by the defendants

in support of summary judgment, the court must address a procedural

issue.  In his reply brief in support of his motion for reconsideration,

Trudeau contends that the court cannot rely on alternative grounds for

summary judgment as a basis for denying his motion for reconsideration.

Rather, Trudeau argues, the court should first grant the motion for

reconsideration, and only then address the alternative grounds.  In *Vaughn*

*v. Consumer Home Mortgage Co.,* 470 F. Supp. 2d 248, 251 (E.D.N.Y.

2007), the court followed the approach advocated by Trudeau.  By

contrast, in *Hamad v. Nassau County Medical Center*, 191 F. Supp. 2d

286, 305 (E.D.N.Y. 2000), the court denied the motion for reconsideration

on other grounds.  The court agrees with Trudeau that the better approach

is to grant the motion for reconsideration, and then proceed to consider other grounds for summary judgment.[3]  Accordingly, the court has followed this approach.

However, to the extent that Trudeau argues that it is necessary for the court to vacate its prior judgment, the court disagrees.  For purposes of an appeal, vacatur is not necessary.  A motion for reconsideration tolls the time period for appeal until disposition of the motion.  *See* FED. R. APP. P. 4(a)(4)(A); *Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 106 (2d Cir. 1998).  Thus, the hollow victory of winning reconsideration but losing again on the merits is not also a Pyrrhic one.  Nor is vacatur necessary on the grounds that the judgment, though appropriate, was based on erroneous considerations.  If the Circuit may affirm a district court judgment "on other grounds," *see, e.g., Holcomb v. Lykens,* 337 F.3d 217, 218 (2d Cir. 2003), the court sees no reason why it cannot affirm its own earlier judgment on other grounds as well.  Thus, the court will not vacate a judgment upon grant of a motion for reconsideration unless it determines that the judgment itself–as distinguished from the opinion pursuant to which

---

[3]To deny reconsideration on other grounds makes little sense; a court following this approach has clearly "reconsidered" the basis for its opinion, but it has ultimately reached the same result.

it issued–was in error.

### 1.   __Mootness__

Having addressed this preliminary matter, the court turns now to the other reasons proffered by defendants in support of their motion for summary judgment.  Defendants urge the court to grant summary judgment on the basis of mootness.  (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Recons., pp. 6-7; Dkt. No. 148.)  The case is moot, they argue, because (1) Trudeau no longer airs infomercials for the Natural Cures book, and (2) Mindy Bockstein, the new Chairperson and Executive Director of the CPB, has stated that "[t]he current CPB administration has no intention of directly contacting cable stations to request that they display a disclaimer prior to airing an advertisement or that they refrain or cease from airing an advertisement."  (Bockstein Aff., ¶ 13; Dkt. No. 130.)[4]  The first contention is without merit.  Although the primary purpose of Trudeau's current set of infomercials is to promote his other books, the infomercials also offer the Natural Cures book for sale for the cost of shipping and handling.  (*See generally* Infomercial Tr., attached as Ex. K to Holohan Affirmation; Dkt.

---

[4]Bockstein further represented that in the absence of any complaints, "the CPB does not intend to initiate an investigation or take any other action regarding the infomercials that are currently airing."  (Bockstein Aff., ¶ 14; Dkt. No. 130.)

No. 130.)

As to the second contention, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 189 (2000) (quotations and citation omitted).  The CPB's reliance on *New York Magazine v. Metropolitan Transp. Auth.,* 136 F.3d 123 (2d Cir. 1998), is misplaced.  In that case, New York Magazine brought suit against the MTA and the City of New York after a New York Magazine advertisement was removed from MTA-operated buses following a complaint from the Mayor's office.[5]  New York Magazine alleged violations of its First and Fourteenth Amendment rights, and sought injunctive relief.  The Second Circuit held that New York Magazine lacked standing to sue the City of New York, because there was no "real and immediate threat" that the Mayor's office would take further action to interfere with MTA's display of the advertisement.  *Id.* at 127.

The *New York Magazine* case bears a superficial similarity to the

---

[5]The advertisement featured the New York Magazine logo and read "[p]ossibly the only good thing in New York Rudy hasn't taken credit for."  *New York Magazine,* 136 F.3d at 125.

facts of the current case.  A critical distinction, however, is that *New York Magazine* addressed standing, not mootness.  As previously noted, in *Laidlaw,* 528 U.S. at 174, the Supreme Court held that a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.  By contrast, a defendant's cessation of illegal conduct prior to the initiation of a suit will often negate standing.  The Court in *Laidlaw* provided the following example:

> When, for example, a mentally disabled patient files a lawsuit challenging her confinement in a segregated institution, her postcomplaint transfer to a community-based program will not moot the action . . . despite the fact that she would have lacked initial standing had she filed the complaint after the transfer.

*Id.* at 190-91 (citing the facts of *Olmstead v. L.C.,* 527 U.S. 581 (1999)).  Thus in *Laidlaw* the Court retreated, to an extent, from its earlier description of mootness as "standing set in a time frame."  *Id.* at 190.  The concepts of mootness and standing are closely related, but not coextensive. Therefore, *New York Magazine,* a case about standing, does not control here.

Instead, the court finds guidance in *Tsombanidis v. West Haven Fire Department,* 352 F.3d 565 (2d Cir. 2003).  In that case, residents of a communal boarding house for recovering alcoholics and drug addicts

brought an action against the City of West Haven and the West Haven Fire District alleging, *inter alia,* that the Fire District's enforcement of certain provisions of the Connecticut Fire Safety Code violated the Fair Housing Act and the Americans with Disabilities Act. *Id.* at 570-72. The question of mootness arose when, subsequent to the commencement of legal proceedings, the Fire District adopted a new interpretation of the Fire Safety Code under which the boarding house could be considered a single-family dwelling, thereby exempting it from the safety requirements applicable to "lodging and rooming" establishments. *Id.* at 572-73. Relying on the principle that the voluntary cessation of illegal activities does not necessarily moot a case, the Second Circuit held that the case was not moot because "the interpretation of the code might change again–for example, upon a change in the State Fire Marshal's administration." *Id.* at 574. Likewise, the CPB's promises do not moot this case.[6]

### 2.   **Lack of Irreparable Harm**

Although the CPB's representations do not moot the case, they do have a bearing on the propriety of, and need for, injunctive relief. *See City*

---

[6]Moreover, the CPB has not promised that it will never, under any circumstances, contact cable or broadcast stations regarding Trudeau's infomercials. Rather, the CPB's promises are conditional ones. (*See* Bockstein Aff., ¶ 14; Dkt. No. 130 (". . . in the absence of such complaint, the CPB does not intend to initiate an investigation . . .").)

*of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982) (holding that voluntary cessation of a challenged practice "is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice").  In order to obtain a permanent injunction, Trudeau "must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted."  *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006) (quotations and citations omitted).  Injunctive relief is inappropriate "where there is no showing of any real or immediate threat that the plaintiff will be wronged again."  *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983).[7]

*Levin v. Harleston,* 966 F.2d 85 (2d Cir. 1992), is instructive on the issue of irreparable harm.  In that case the plaintiff, a tenured professor at the City College of the City University of New York, sought an injunction to prohibit the College president from initiating disciplinary proceedings against him on the basis of speech outside of the classroom.  The professor was a controversial figure due to his views on race, which had

---

[7]The *Lyons* opinion is best known for its analysis of standing.  However, as an alternative to its holding that Lyons lacked standing to challenge the use of chokeholds by the police, the Court held that even if Lyons had standing, "[t]he speculative nature of Lyons' claim of future injury requires a finding this prerequisite of equitable relief [*i.e.,* irreparable injury] has not been fulfilled."  *Lyons,* 461 U.S. at 111.

been expressed in a series of published writings.  *Id.* at 87.  The district court entered the requested injunction upon its determination that the College president's appointment of a committee to investigate the professor's behavior created a chilling effect on the professor's First Amendment rights.  *Id.* at 89-90.  The Second Circuit agreed with the district court that the president's actions "conveyed a chilling threat of discipline."  *Id.* at 90.  However, the Circuit held that the professor was not entitled to injunctive relief because the committee had ultimately recommended that the professor not be disciplined.  *Id.*  Of particular significance here, the court noted that the controversy was not moot, because the president had not shown that there was "no reasonable expectation that the wrong will be repeated."  *Id.* (citation omitted). However, even though the case was not moot, injunctive relief was inappropriate because the professor had not demonstrated irreparable harm that was "real and imminent, not remote."  *Id.* (alteration and citation omitted).

Assuming, without deciding, that Trudeau could show that future contact between the CPB and cable and broadcast media carriers would violate his First Amendment rights, (*see* Am. Compl., Count I, pp. 20-21;

17

Dkt. No. 87), Trudeau would be unable to establish the requisite irreparable harm.[8]  As in *Levin, supra,* the threatened harm posited by Trudeau is simply too speculative.  *See Marriott v. County of Montgomery,* 426 F. Supp. 2d 1, 11 (N.D.N.Y. 2006) (noting, in context of a request for a permanent injunction, that "[i]rreparable harm must be imminent, not remote or speculative").[9]  The CPB has represented that: (1) it "has no intention of directly contacting cable stations to request that they display a disclaimer prior to airing an advertisement or that they refrain or cease from airing an advertisement" (Bockstein Aff., ¶ 13; Dkt. No. 130); and (2) in the absence of any complaint, it "does not intend to initiate an investigation or take any other action regarding the infomercials that are currently airing." (*Id.* at ¶ 14.)  These representations of a government agency are entitled to a presumption of good faith.  *See Harrison & Burrowes Bridge*

---

[8]Irreparable harm cannot be established by reference to a past injury.  *See Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement . . . .").

[9]The Second Circuit has suggested that harm need not be "imminent" in order for a permanent injunction to be issued.  *See Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 235 n. 9 (2d Cir. 1999) ("Although a showing of 'irreparable harm' is required for the imposition of any injunctive relief, preliminary or permanent, the 'imminent' aspect of the harm is not crucial to granting a permanent injunction.") (citations omitted).  However, the feared injury must still be "likely," as opposed to merely speculative.  *See Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990) ("Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.") (quotations and citations omitted).

*Constructors, Inc., v. Cuomo,* 981 F.2d 50, 59 (2d Cir. 1992) ("Some

deference must be accorded to a state's representations that certain

conduct has been discontinued."); *Campbell v. Greisberger,* 865 F. Supp.

115, 121 (W.D.N.Y. 1994) (irreparable harm lacking where members of the

Character and Fitness Committee submitted affidavits stating they no

longer intended to inquire into plaintiff's mental illness); *cf. DeFunis v.

Odegaard,* 416 U.S. 312, 317 (1974) (suit challenging state-operated law

school's admissions policies deemed moot in light of school's

representation that plaintiff's status as a duly enrolled student would not be

affected by the Court's decision).

In light of the CPB's stated intentions, the conduct feared by Trudeau

will only occur if the CPB receives a complaint and determines, after an

investigation, that action should be taken.  Trudeau's new infomercials

have been airing for some time now, and the CPB has received no

complaints.  (*See* Bockstein Aff., ¶ 14; Dkt. No. 130.)  *Cf. Lyons,* 461 U.S.

at 108 (noting, as a factor going to lack of standing, that "five months

elapsed between [the date of the chokehold] and the filing of the complaint,

yet there was no allegation of further unfortunate encounters between

Lyons and the police").  Moreover, there is no indication that the CPB has

taken action with respect to Trudeau's infomercials during the pendency of this motion, in spite of the court's dissolution of the preliminary injunction on November 30, 2007.[10]  Finally, Trudeau has conceded that it is not the "custom or practice" of the CPB to contact broadcasters.  (*See* Pls.' N.D.N.Y. R. 7.1(a)(3) Statement of Material Facts, ¶ 9; Dkt. No. 135.)  As discussed, this does not necessarily mean that the CPB Letter was not sent pursuant to CPB "policy."  However, it does lend credence to the CPB's position that similar letters are unlikely to be sent, especially since Teresa Santiago, the alleged "policymaking official" responsible for the CPB Letter (*see* Pls.' Br. in Supp. of Mot. for Recons., p. 5; Dkt. No. 147), is no longer the Executive Director of the CPB.

Thus, even assuming that the feared contact between the CPB and cable and broadcast stations would violate Trudeau's First Amendment rights, the potential occurrence of such contact is too speculative to justify the grant of a permanent injunction.  Accordingly, the court affirms its earlier grant of summary judgment in favor of the defendants on Trudeau's requests for injunctive relief.

---

[10]Nor did Trudeau seek a continuation of the preliminary injunction pending resolution of his motion for reconsideration.  *Cf. Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 178 (2d Cir. 2000) ("The seeming lack of urgency on the part of a plaintiff who has been denied interim relief tends to confirm the view that irreparable harm was not imminent.").

### 3.     Declaratory Relief

In addition to injunctive relief, Trudeau also seeks declaratory relief. (*See* Am. Compl., ¶¶ (a)-(c) of WHEREFORE clause; Dkt. No. 87.)[11] Trudeau requests, in addition to other similar relief*,* "a declaratory judgment that Defendants' action and threatened action to coerce cable stations or other carriers to refuse to carry, or to discontinue carrying, the Natural Cures infomercial . . . violates Trudeau's rights under the First Amendment."  (Am. Compl., ¶ (b) of WHEREFORE clause; Dkt. No. 87.)

Irreparable harm is not a prerequisite for declaratory relief.  *See Levin,* 966 F.2d at 90.  Thus, in *Levin*, although the Second Circuit vacated the injunction entered by the district court, it granted declaratory relief.  *See id.* (declaring that "the commencement, or threat thereof, of disciplinary proceedings against [the professor] predicated solely upon his protected speech outside the classroom violates his First Amendment rights").

*Levin* is distinguishable, however, on the basis of the fact that in *Levin* there is no indication that the College president made

---

[11]In point of fact, it is unclear whether Trudeau continues to seek declaratory relief.  In his brief in opposition to the defendants' motion for summary judgment, Trudeau stated that "Plaintiffs currently are seeking only equitable relief to enjoin the CPB from directly interfering with infomercials that promote the Natural Cures book."  (Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., p. 6; Dkt. No. 134.)  However, having learned from experience, the court addresses the requests for declaratory relief.

representations concerning his future intentions with regard to the

professor.  Insofar as declaratory relief is concerned, the facts of the

current case align more closely with *Eccles v. Peoples Bank of Lakewood

Village,* 333 U.S. 426 (1948).  In *Eccles,* the respondent Bank sought, *inter

alia,* a declaration that a condition imposed by the Board of Governors for

membership in the Federal Reserve System was invalid.  *Id.* at 427-28.

The condition at issue ("Condition No. 4") provided, in substance, that the

Bank be required to withdraw from membership in the Federal Reserve

System if Transamerica Corporation, a bank holding company, acquired an

interest in the Bank.  *Id.*  The suit was commenced upon Transamerica's

acquisition of 540 of the 5,000 shares of the Bank's outstanding stock.  *Id.*

at 428.  The Supreme Court held that a declaratory judgment was not

warranted.  The Court noted that Condition No. 4, while broadly worded,

was motivated by Board of Governors' concern that Transamerica might

take a *controlling interest* in the Bank, and that the Board had "formally

disavowed any intention to invoke [the] condition against [the Bank] merely

because of acquisition by Transamerica of an interest in the Bank, with no

indication of subversion of its independence."  *Id.* at 430-31.  Thus, "[w]hat

the Bank really fear[ed], and for which it [sought] relief, [was] that *under*

*changed conditions, at some future time*, it [might] be required to withdraw from membership . . . ."  *Id.* at 432 (emphasis added).  The Court concluded that "[t]he concurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations."  *Id.*

In reaching its decision, the Court considered, and rejected, the Bank's argument that the Board of Governors might change its policy and seek strict enforcement of Condition No. 4.  *Id.* at 433.  In fact, to the Court's mind, "[s]uch an argument reveal[ed] the hypothetical character of the injury on the existence of which a jurisdiction rooted in discretion is to be exercised."  *Id.*  The Court declined the Bank's invitation "to contemplate as a serious danger that a body entrusted with some of the most delicate and grave responsibilities in our Government will *change a deliberately formulated policy after urging it on this Court . . . .*"  *Id.* (emphasis added).

Declaratory relief "should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles,* 333 U.S. at 431; *see also Kraebel v. New York City Dept. of Hous. Pres. and Dev.,* No. 90-cv-4391, 2002 WL 14364, at *6 (S.D.N.Y. Jan. 3, 2002) ("[A] declaration that the earlier, stale procedures were unconstitutional would be a waste of

judicial resources and serve no useful purpose."). Moreover, "[e]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Eccles,* 333 U.S. at 431. In light of the CPB's representations and the speculative nature of the harm posited by Trudeau*,* declaratory relief is inappropriate in this case. Accordingly, the court affirms its earlier grant of summary judgment in favor of the defendants on Trudeau's requests for declaratory relief.

**WHEREFORE**, for the foregoing reasons, it is hereby

     **ORDERED** that Trudeau's motion for reconsideration (Dkt. No. 147) is GRANTED; and it is further

     **ORDERED** that the Judgment in favor of the defendants (Dkt. No. 146) is AFFIRMED.

**IT IS SO ORDERED.**

Dated: February 25, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge