**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN TRUDEAU, ALLIANCE**
**PUBLISHING GROUP, INC., and**
**SHOP AMERICA (USA) L.L.C.,**

                             **Plaintiffs,**              **No. 05-cv-1019**
                                                          **(GLS-RFT)**

        **v.**

**MINDY BOCKSTEIN,** _in her official_
_capacity,_ **and JON SORENSEN,**
_in his official capacity_,

                             **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Jenner & Block LLP             DANIEL HURTADO, ESQ.
330 North Wabash Avenue     DAVID BRADFORD, ESQ.
Chicago, Illinois 60611

Hiscock & Barclay LLP          MICHAEL GRYGIEL, ESQ.
50 Beaver Street               WILLIAM HURST, ESQ.
Albany, New York 12207

**FOR THE DEFENDANTS:**
HON. ANDREW M. CUOMO     ROGER KINSEY, ESQ.
New York State Attorney General
The Capitol
Albany, New York 12224

New York State Department of Law   JAMES MCGOWAN, ESQ.
The Capitol

Albany, New York 12224
**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

By Memorandum-Decision and Order dated February 25, 2008, the court affirmed its earlier grant of summary judgment in favor of the defendants.  Pending is the plaintiffs' motion for an award of costs, including attorney's fees, under 42 U.S.C. § 1988.  For the reasons that follow, the motion is granted.

### II.  Facts and Procedural History

The plaintiffs – to whom the court will refer collectively as "Trudeau" – brought this action seeking to enjoin the defendants, employees of the New York State Consumer Protection Board (the "CPB"), from contacting cable and broadcast stations and requesting that they refuse to carry advertisements for Kevin Trudeau's book, *Natural Cures "They" Don't Want You to Know About* (the "Natural Cures book").  In addition to preliminary and permanent injunctive relief, Trudeau sought a declaration that the CPB's threatened action would violate his First Amendment rights.

The case was commenced on August 11, 2005 by the filing of a

Complaint accompanied by a motion for a temporary restraining order ("TRO"). (Dkt. Nos. 1 & 2.) By Text Only Order dated August 15, 2005, the court denied Trudeau's application for a TRO, having determined that the ex parte application failed to comply with the Federal Rules of Civil Procedure and the Local Rules. On August 16, 2005, Trudeau filed a renewed motion for a TRO that would have required the CPB to provide Trudeau with at least 72 hours notice prior to contacting cable and/or broadcast stations. (Dkt. No. 6.) This motion, too, was denied. (*See* Oral Order dated August 30, 2005.)

On August 31, 2005, Trudeau filed a third motion for a TRO. (Dkt. No. 17.) This time, the court granted the TRO pending a hearing on Trudeau's motion for a preliminary injunction. (*See* Order; Dkt. No. 20.) At a hearing on September 6, 2005, the court granted the motion for a preliminary injunction. The court's Oral Order (which, in essence, simply extended the TRO) enjoined the CPB from: (1) "directly contacting any cable or broadcast station in order to induce such station to refuse to carry, or cease to carry, [Trudeau's] advertisements for the Natural Cures book authored by Kevin Trudeau"; and (2) "publishing or disseminating the letter attached as Exhibit A to the TRO application, or any letter substantially

3

similar in content, as a means of indirectly contacting cable or broadcast stations."  (*See* Oral Order dated September 6, 2005.)  In granting this provisional relief, the court found that Trudeau had demonstrated a "sincere, heavy likelihood" of success on the merits.  (*See* Transcript of Proceedings at 16-17, 85, attached as Ex. B to the Hurtado Decl.; Dkt. No. 152.)

On April 23, 2007, the CPB filed a motion for summary judgment on the grounds of, *inter alia,* Eleventh Amendment immunity, mootness, and lack of irreparable harm.  (Dkt. No. 130.)  In support of its mootness argument, the CPB proffered the affidavit of Mindy Bockstein, the Chairperson and Executive Director of the CPB.  Bockstein represented to the court that "[t]he current CPB administration has no intention of directly contacting cable stations to request that they display a disclaimer prior to airing an advertisement or that they refrain or cease from airing an advertisement."  (Bockstein Aff. ¶ 13; Dkt. No. 130.)  Additionally, Bockstein represented that in the absence of any complaints, "the CPB does not intend to initiate an investigation or take any other action regarding the infomercials that are currently airing."  (*Id.* at ¶ 14.)

By Memorandum-Decision and Order dated November 30, 2007

4

(hereinafter "*Trudeau I*"), the court dismissed Trudeau's Amended

Complaint on the grounds of Eleventh Amendment immunity, and dissolved

the preliminary injunction.  (Dkt. No. 145.)[1]  Judgment was entered in favor

of the CPB.  (Dkt. No. 146.)  On December 10, 2007, Trudeau filed a

motion for reconsideration.  (Dkt. No. 147.)  In a Memorandum-Decision

and Order dated February 25, 2008 (hereinafter "*Trudeau II*"), the court

affirmed the earlier judgment in favor of the CPB, albeit on different

grounds.  (Dkt. No. 151.)[2]  The court held that, in light of Bockstein's

representations concerning the CPB's intentions, the possibility of future

harm to Trudeau was too speculative to warrant the grant of declarative or

injunctive relief.  (*See Trudeau II* at 15-24.)

Although Trudeau's claims were ultimately dismissed, he now seeks

costs and attorney's fees as a "prevailing party."  Trudeau bases his claim

to such status on the fact that he "achieved a judicially sanctioned

alteration in the parties' legal relationship that afforded [the plaintiffs] the

precise relief they sought in filing this action: stopping and preventing the

CPB from interfering with the Natural Cures infomercials."  (Pl.'s Br. at 7;

---

[1]*Trudeau v. Bockstein,* No. 05-cv-1019, 2007 WL 4264583 (N.D.N.Y. Nov. 30, 2007).

[2]*Trudeau v. Bockstein,* No. 05-cv-1019, 2008 WL 541158 (N.D.N.Y. Feb. 25, 2008).

5

Dkt. No. 152.)

### III. <u>Discussion</u>

### A.    <u>Timeliness of the Motion</u>

Before addressing Trudeau's status as a "prevailing party," the court

must resolve the matter of the timeliness of Trudeau's motion for attorney's

fees.  Trudeau's motion for reconsideration has added an additional wrinkle

to this inquiry.  It is the CPB's contention that the time period for seeking

attorney's fees began to run upon the issuance of the November 30, 2007

Memorandum-Decision and Order, not the February 25, 2008

Memorandum-Decision and Order.  Thus, by the CPB's calculations,

Trudeau's motion for an award of attorney's fees is untimely.

The court rejects this argument.  The Federal Rules of Civil

Procedure provide that a motion for attorney's fees and expenses must "be

filed no later than 14 days after the entry of judgment."  FED. R. CIV. P.

54(d)(2)(B).  The instant motion for fees was filed on March 10, 2008, more

than 14 days after the entry of judgment on November 30, 2007.  However,

the case law establishes that a rigid application of the 14 day deadline is

not always appropriate when a motion for reconsideration has been filed.

The Second Circuit has held that:

> . . . because the finality of a judgment is negated by the timely
> filing of a motion under Rule 50(b), 52(b), or 59, we conclude
> that a Rule 54(d)(2)(B) motion is timely if filed no later than 14
> days after the resolution of such a Rule 50(b), 52(b), or 59
> motion.

*Weyant v. Okst,* 198 F.3d 311, 315 (2d Cir. 1999).  Thus, the only question

is whether Trudeau's motion for reconsideration was filed pursuant to one

of the referenced Rules, that is, Rule 50(b), 52(b), or 59.

Trudeau's motion for reconsideration was designated as a motion

filed pursuant to Rule 60.  (*See* Dkt. No. 147.)  However, the Second

Circuit has held that regardless of the label that the movant places on it, "a

postjudgment motion made within 10 days after entry of judgment, if it

involves reconsideration of matters properly encompassed in a decision on

the merits, is to be deemed a motion to alter or amend the judgment

pursuant to Rule 59(e) . . . ."  *Jones v. UNUM Life Ins. Co. of America,* 223

F.3d 130, 136-37 (2d Cir. 2000).  Therefore, Trudeau's motion for

reconsideration, filed within 10 days of the entry of judgment, is properly

treated as a Rule 59(e) motion.  As such, the filing of the motion for

reconsideration negated the finality of the November 30 judgment.

Pursuant to the Second Circuit's holding in *Weyant,* the November 30

judgment did not become final until the resolution of Trudeau's motion for

reconsideration on February 25, 2008.  Accordingly, the motion for an award of costs and attorney's fees, filed within 14 days of the February 25, 2008 Memorandum-Decision and Order, was timely.

**B.    Trudeau's Entitlement to Attorney's Fees**

Pursuant to 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  At issue here is Trudeau's status as a "prevailing party."[3]

That Trudeau's Complaint was ultimately dismissed is not necessarily determinative.  The relevant Supreme Court precedent – as construed by the Second Circuit – counsels that "status as a prevailing party is conferred whenever there is a 'court ordered change in the legal relationship between the plaintiff and the defendant' or a 'material alteration of the legal relationship of the parties.'" *Pres. Coal. of Erie County v. Fed. Transit Admin.,* 356 F.3d 444, 452 (2d Cir. 2004) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 604 (2001)) (internal quotations and alterations omitted).

Here, the preliminary injunction entered on September 6, 2005

––––––––––––––––––––

[3]In evaluating Trudeau's entitlement to attorney's fees, the court has limited its consideration to the arguments advanced by the parties.

8

resulted in a court ordered change in the legal relationship between the parties. At the outset of the litigation, the CPB took the position that it was within its rights to send letters to cable and broadcast stations concerning the Natural Cures Book. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for a Preliminary Injunction at 6-11; Dkt. No. 14.) In spite of the CPB's arguments, however, the court enjoined the sending of such letters.

The CPB seeks to minimize the impact of this court ordered change, noting that the preliminary injunction was limited in scope. But it is of no moment that the injunction did not bar all conceivable actions which the CPB might take in response to Trudeau's infomercials; it is sufficient that it barred some. What is more, in spite of the CPB's suggestion to the contrary, the case law does not require a "significant change" in the legal relationship between the parties, merely a change. Where, as here, the plaintiff has requested certain relief, the defendant has objected to the grant of such relief, and the court has granted the requested relief (at least in part),[4] it borders on the frivolous to deny that a court ordered change has

---

[4]In his original Complaint, Trudeau requested, among other relief, "a preliminary and permanent injunction prohibiting [the CPB] from contacting cable and broadcast media carriers and requesting that they refuse to carry, or cease carrying, [Trudeau's] advertisements for the Natural Cures book." (Compl. at 13; Dkt. No. 1.) The preliminary injunction granted precisely such relief, in that it barred the CPB from "contacting any cable or broadcast station in order to induce such station to refuse to carry, or cease to carry, [Trudeau's] advertisements for the

occurred.

Whether the court ordered change was somehow reversed or undone is a closer call.  In *Sole v. Wyner,* 127 S. Ct. 2188 (2007), the Supreme Court held that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case."  *Id.* at 2195.  Taken out of context, this language would appear to preclude Trudeau's claim to prevailing party status.  After all, the final judgment in this case specifically provided that "the preliminary injunction issued by oral order dated September 6, 2005, is dissolved."  (*See* Judgment; Dkt. No. 146.)

However, the Court's holding in *Sole* must be read in the context of the question it set out to answer, to wit: "Does a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication *on the merits*, qualify as a 'prevailing party' within the compass of § 1988(b)?"  *Sole,* 127 S. Ct. at 2191 (emphasis added).  When read in conjunction with this introductory question posed by the Court, it is plain that the holding in *Sole* was targeted at preliminary injunctions which are subsequently dissolved on the

---

Natural Cures book."  (*See* Oral Order dated September 6, 2005.)

merits, not preliminary injunctions which are dissolved on grounds such as mootness.  Indeed, the Court was careful to note that it "express[ed] no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 2196.  Thus, both prior to, and subsequent to, the Court's holding in *Sole,* lower courts have held that a plaintiff is entitled to prevailing party status when he initially succeeds in obtaining a preliminary injunction, but the need for injunctive relief is mooted by subsequent developments in the case.  *See, e.g., Haley v. Pataki,* 106 F.3d 478, 483 (2d Cir. 1997); *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir. 2002); *People Against Police Violence v. City of Pittsburgh,* 520 F.3d 226, 232-34 (3d Cir. 2008); *Dearmore v. City of Garland,* 519 F.3d 517, 524-26 (5th Cir. 2008).

Here, of course, the court did not dismiss the case on mootness grounds.  Instead, the court determined that a permanent injunction was unnecessary in light of the fact that any future injury was speculative and remote.  (*See Trudeau II* at 15-20.)  The CPB contends that this holding amounted to the vacation of the preliminary injunction on the merits, thus placing the case squarely within the holding of *Sole.*  The court rejects this

11

argument.  Simply put, *Trudeau II* contains no discussion of the merits of the alleged First Amendment violation that lies at the heart of this case. The CPB appears to conflate the issues of irreparable harm and likelihood of success on the merits; the two are distinct concepts.  While *Trudeau II* contains a re-evaluation of the possibility of harm, there is nothing in the opinion that can be read as rejecting or calling into question the court's original conclusion that "there is a sincere, heavy likelihood in this case that . . . the Consumer Protection Board has violated the First Amendment rights of Mr. Trudeau."  (*See* Transcript of Proceedings at 85, attached as Ex. B to the Hurtado Decl.; Dkt. No. 152.)  Therefore, *Sole* is inapposite. Instead, the court's holding in *Trudeau II* is sufficiently analogous to a holding of mootness such that the rationale of cases such as *Haley* and *Dearmore* applies.

In summary, the preliminary injunction of September 6, 2005 constituted a court ordered change in the legal relationship between the parties.  The preliminary injunction was not subsequently dissolved on the merits.  Accordingly, Trudeau is a prevailing party for purposes of 42 U.S.C. § 1988.

## C.   Amount of Attorney's Fees

12

In determining an appropriate attorney's fee, courts within the Second Circuit apply the "presumptively reasonable fee analysis." *See Porzig v. Dresdner, Kleinwort, Benson, North America LLC,* 497 F.3d 133, 141 (2d Cir. 2007). This analysis "involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award." *Id.* (citations omitted). The following "*Johnson* factors" bear on the reasonableness of the hourly rate and/or the hours expended: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2008) (referencing the factors set forth

in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

In this case, Trudeau seeks fees and expenses in the amount of $395,222.  (*See* Pls.' Reply Br. at 9-10; Dkt. No. 156.)  These fees and expenses correspond to work performed by attorneys from Jenner & Block LLP and Hiscock & Barclay LLP from August 6, 2005 up to and including September 6, 2005.  (*See* Hurtado Decl. ¶¶ 46, 47; Dkt. No. 156.)[5]  The start date of August 6, 2005 corresponds to the date on which, according to Trudeau, the CPB first manifested a threat to contact cable stations to pull Trudeau's infomercials.  (*See id.* at ¶¶ 5, 6, 47.)  The end date is the date on which the court granted the preliminary injunction requested by Trudeau.

The Jenner & Block attorneys involved in this case are not local attorneys, but rather are based in Chicago, Illinois and Washington, D.C. Attorneys from Jenner & Block have represented Trudeau since 1995. (*See* Hurtado Decl. ¶¶ 29, 31; Dkt. No. 156.)  The requested hourly rates for the Jenner & Block attorneys involved in this case are as follows: David

---

[5]With respect to Hiscock & Barclay, the first date for which fees are requested is August 11, 2005.

Bradford, partner, Chicago, $585; Andrew Jacobson, partner, Chicago, $450; Daniel Hurtado, partner, Chicago, $425; Daniel Mach, partner, Washington, $425; Craig Cowie, associate, Washington, $340;[6] Victoria Jueds, associate, Washington, $310; Andrew Vail, associate, Chicago, $235; Eric Berger, associate, Washington, $235; Luke Platzer, associate, Washington, $235; Shana Shifrin, associate, Chicago, $235; Wade Gentz, associate, Washington, $235; Wade Thomson, associate, Chicago, $215.[7] In addition to these attorneys, Jenner & Block staff also billed time to this matter at the following requested hourly rates: Cheryl Olson, senior paralegal, $210; Shawn McGee, senior paralegal, $190; Brian Kusper, project assistant, $110; Sarah Griggs, project assistant, $110.  Finally, the local attorneys from Hiscock & Barclay request the following hourly rates: Michael Grygiel, $345; Kevin Laurilliard, $275; Glen Doherty, $250; William Hurst, $190.

The CPB advances several arguments in opposition to Trudeau's requested fees.  First, the CPB argues that Trudeau has submitted

---

[6]Mr. Cowie is now a partner.

[7]William Lee, an associate whose billing rate was $235, also billed time to the case. However, in light of the fact that he only billed 4.5 hours, Trudeau has withdrawn his request for fees for Mr. Lee's time.  (*See* Hurtado Decl. ¶ 40; Dkt. No. 156.)

insufficient documentation, in that the records submitted by Trudeau are invoices as opposed to contemporaneous time records. The distinction is meaningless here. The invoices reflect the dates on which the hours were billed, and contain a description of the work performed for each time entry. Moreover, the attorney declarations submitted in support of Trudeau's fee request confirm that the time entries were made contemporaneously to the work performed. (*See* Hurtado Decl. ¶ 25 and Grygiel Decl. ¶ 5; Dkt. No. 152.)

Second, the CPB argues that Trudeau's application contains insufficient information concerning the experience of the various attorneys involved in the case. It is true that without such information the court cannot properly evaluate the reasonableness of the requested fees. However, Trudeau corrected this omission by submitting, in reply to the CPB's opposition, biographical information concerning the attorneys for whose work fees were requested. In the usual case, "[a]rguments may not be made for the first time in a reply brief." *See Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993). Here, however, the biographical information submitted by Trudeau in reply is readily available in the public domain, and the court takes judicial notice of it.

16

Third, the CPB objects to the requested hourly rates.  The requested rates are, indeed, unusually high for this District.  Recent cases suggest that a reasonable paying client in this District would be willing to pay approximately $210 per hour for an experienced attorney, $150 per hour for a mid-level attorney, $120 per hour for a junior attorney, and $80 per hour for a paralegal.  *See, e.g., Paramount Pictures Corp. v. Hopkins,* No. 07-cv-593, 2008 WL 314541, at *5 (N.D.N.Y. Feb. 4, 2008); *Lewis v. City of Albany Police Dept.,* No. 04-cv-152, 2008 WL 2103565, at *1 (N.D.N.Y. May 20, 2008).  However, the facts and circumstances of each case are different and the court is not compelled to award the same hourly rates in every case.  This court, for instance, recently granted an hourly rate of $250 to a local attorney.  *See Overcash v. United Abstract Group, Inc.,* 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008).  Moreover, the Second Circuit has held that "a district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates."  *Arbor Hill,* 522 F.3d at 191.

Here, in light of the extensive experience and expertise of the lawyers

retained by Trudeau – both local and out-of-district – the court finds that the rates requested are reasonable.  This finding is bolstered by the fact that Trudeau, the client, actually assented to the rates.  While not dispositive, this has at least some bearing on the question of whether a reasonable client "would have" paid the requested rates.  *See, e.g., Pugach v. M&T Mortgage Corp.,* No. 05-cv-2498, 2008 WL 2310563, at *3 (E.D.N.Y. Jun. 4, 2008) (noting that "the actual fee arrangement between a party and its counsel is relevant evidence of what constitutes a 'reasonable' fee").  Additionally, the court's holding that the rates are reasonable is bolstered by the fact that Trudeau was required to retain counsel on an expedited basis due to his perception that harm was imminent.  In the circumstances, it was reasonable to retain his longtime counsel, Jenner & Block, rather than searching out a cheaper alternative.

Finally, the CPB objects to the number of hours for which Trudeau's attorneys seek compensation.  Specifically, the CPB argues that the entire request is devoid of any discussion or proffer with regard to the applicable lodestar requirements and that Trudeau is requesting fees for work that was unrelated to the limited relief that the court granted, i.e., the TRO of August 31, 2005 and the preliminary injunction of September 6, 2005.  This

objection is well taken.  Trudeau has made no effort to explain how the billing entries prior to August 31, 2005 relate to the August 31, 2005 TRO and the September 6, 2005 preliminary injunction.  Instead, Trudeau appears to assume – and asks the court to do likewise – that essentially all attorney hours worked prior to the grant of the requested preliminary injunction were in some way integral to his success in obtaining the preliminary injunction.  But the court cannot make such an assumption, especially in light of the fact that in August of 2005 alone, the court denied two of Trudeau's requests for a TRO.

An example will illustrate the point.  The Jenner & Block invoices indicate that on August 9, 2005, Daniel Hurtado "worked on strategizing and logistics of filing complaint and motion for TRO" and Wade Gentz "[r]esearched and drafted First Amendment section of brief in support of motion for TRO."  (*See* Invoices attached as Ex. D to Hurtado Decl.; Dkt. No. 152.)  Given the date, it seems clear that the "TRO" referenced in the time entries was the TRO that the court denied on August 15, 2005.  It is almost certainly the case that the research, drafting, strategy sessions, and other work that went into the first two unsuccessful TRO motions were re-utilized in filing the third successful TRO motion and the successful motion

for a preliminary injunction.  In theory, then, some portion of the work on the first two unsuccessful TRO motions might be compensable on the grounds that the same work product was used in connection with the successful motion for a TRO and preliminary injunction.  Trudeau, however, has not made this argument, and has not provided the court with any basis for determining which attorney hours prior to August 30, 2005 (the date the second TRO motion was denied) were integral to the attainment of the TRO of August 31, 2005 and the preliminary injunction of September 6, 2005.  As the party seeking fees, it was Trudeau's responsibility to demonstrate his entitlement by explaining the relevance of the time entries.  He has not done so.  The court cannot comb through the legal invoices on its own and determine, without input from the parties, which hours were related to successful portions of Trudeau's lawsuit and which hours were spent in pursuit of failed endeavors.  Therefore, the court will not award any fees for the time period prior to and including August 30, 2005, the date on which the court denied Trudeau's second motion for a TRO.[8]

---

[8]The Jenner & Block invoices indicate that Jenner & Block attorneys began work on the successful TRO motion on August 30, 2005.  The court cannot award fees for this work, however, because the time entries (and Trudeau's motion papers) are silent as to what portion of the hours worked on August 30, 2005 were devoted to the motion that was denied on that

As for the period of time between August 31, 2005 and September 6, 2005, inclusive, the court finds, upon consideration of the time entries and the attorney declarations, that the work performed was related to the TRO of August 31, 2005 and the preliminary injunction of September 6, 2005. Furthermore, the court finds, upon consideration of the relevant *Johnson* factors, that the hours worked by the attorneys and staff from Jenner & Block and Hiscock & Barclay during this time period were reasonable. Accordingly, the court awards the requested attorney's fees for this time period in the amount of $104,191.00.  This figure represents $90,145 in fees for work performed by Jenner & Block attorneys and $15,103.50 in fees for work performed by Hiscock & Barclay attorneys, less the $1057.50 in fees attributable to work performed by attorney William Lee.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Trudeau's motion for an award of costs and fees (Dkt. No. 152) is GRANTED; and it is further

**ORDERED** that Trudeau is awarded attorney's fees in the amount of $104,191.00.

───────────────

date, and what portion of the hours were devoted to the renewed motion which was eventually granted.

21

**IT IS SO ORDERED.**

Albany, New York
August 7, 2008

Gary L. Sharpe
U.S. District Judge